

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 20, 1970

Dr. J. W. Edgar                           Opinion No. M-666
Commissioner of Education
Texas Education Agency               Re: Does an Independent School
Austin, Texas                             District have authority to
                                          contract with private
                                          corporations for instruc-
                                          tions of its pupils, and
                                          related questions.

Dear Dr. Edgar:

By recent letter you have requested an opinion in regard
to the above stated matter. We quote, at length, from your
letter as follows:

"The Dallas Independent School District recognizes
the severe problems in educating the economically
deprived minority groups. The District proposes to
enter into and operate two major research and develop-
ment projects to develop more effective programs and
to alleviate educational deprivation among 1585 inner
city pupils in grades 1, 2 and 3 and grades 7, 8, 9, 10,
11 and 12. The projects will utilize the resources of
business and industry through contracts with firms to
provide specified instructional and other services, with
an incentive-penalty system for payments. Contractors
will be required to install their instructional systems
in approximately 27 regular classrooms, employ and
train a corps of Dallas teachers to operate the programs,
and within a specified period estimated at one to three
years, turn the proven instructional systems back to the
School District to be operated thereafter without
assistance of the contractor.

-3180-

"To ensure local control of the project, the Dallas Independent School District Board of Education will hold the contractors accountable for their performance and pay them based on increases in achievement of pupils. An effective school-operated management system under the direction of the Assistant Superintendent-Accountability supplemented by contracted services of education auditors, will enable Dallas school administrators to monitor continuously the work of the instructional contractors so as to meet the research and development and instructional goals of the project. Both projects will be supported primarily by federal funds. One project is eligible for support under Public Law 874, Title I, III and V of the Elementary and Secondary Education Act and the Vocational Education Act of 1968.

"The second project will be supported entirely by funds from 41 USCA 252 (c)(5) and Section 602(n) of the Economic Opportunity Act, 1964, as amended. Contract No. BIC-5141 between the Office of Economic Opportunity and the Dallas Independent School District has been executed by both institutions; it awaits the recommendations of the Texas Education Agency and the Governor's approval. (Emphasis added.)

### Project One

"One project is entitled 'Guaranteed Student Performance in Education and Training.' This project will serve 985 educationally disadvantaged students, grades 9 through 12, who are enrolled in the following inner city high schools: Pinkston, Madison, Crozier Technical, Roosevelt, and Lincoln. These students will be selected from among those in each school who are performing below expectations in mathematics and English and who have parental approval to participate. Instructional programs will be conducted on these five campuses under the direction of the building principals.

## Project Two

"The second project, 'Performance Incentive Remedial Education Experiment', is one of 18 that the U. S. Office of Economic Opportunity is sponsoring to determine the effectiveness of performance contracting in a variety of educational settings and among various ethnic groups.

"By letter of June 5, 1970 the Dallas school district has asked this Agency to cooperate with the plans by its approval of the above described contractual project(s), to provide financial support as set out in 'Proposed Financial Support for the 'Guaranteed Student Performance in Education and Training Project',' and to designate an Agency Task Force to work with the Dallas administration to complete the operation of the project plan, monitor the project, participate in the project evaluation and disseminate the results.

"In the absence of specific legislation, court decisions or Attorney General rulings relative to the authority of a school district to enter into incentive performance contracts with private concerns or corporations for the educational instruction of public school regular students, on an experimental educational development program basis or otherwise, this Agency as well as the school district need and would appreciate an opinion from your office on the following questions of immediate importance:

"1.  Under current school laws, may a school district (Dallas I.S.D.) enter into incentive performance contract/s with private concerns or corporation/s for service proposed and under the conditions and purposes set forth in the two projects described above--where such program is primarily proposed for a study in depth of the utilization of the capability of the private sector as one strategy to facilitate desirable educational reforms, as distinguished from any general plan or movement to contract to private

corporation/s or firm/s the education of regular public school children?

"2.  Has a school district authority to contract with or enter into agreements with an agency of the federal government?  Secs. 11.02(e); 21.111(b), T.E.C.

"3.  Under Section 21.111(b), T.E.C., does a school district have authority to contract or enter into agreements with private concerns, firms or corporations for the instruction of its public school children?

"4.  Does a school district have authority to expend local maintenance funds to pay part or all of the cost of instruction provided by a private concern or firm under contract with the district."

The pertinent provisions of the Texas Education Code are quoted, in part, as follows:

"Section 11.02.  General Powers and Duties

"(a)...

"(b)...

"(c)  Except for agreements entered into by the governing board of a state university or college, the Central Education Agency shall be the sole agency of the State of Texas empowered to enter into agreements with respect to education undertakings....with an agency of the federal government.  No county board of education or board of trustees of a school district shall enter into contracts with, or accept money from, an agency of the federal government, except under rules and regulations prescribed by the Central Education Agency."

"Section 11.30.  Authority to Enter Into Contracts
for Grants

"For the maintenance and improvement of state
educational programs and activities in the public
schools, the State Board of Education may enter into
contracts for grants from both public and private
organizations and may expend such funds under the
terms and for the specific purposes contracted."

"Section 21.111.  Vocational and Other Educational
Programs

"(a) The board of trustees of any public free
school district of this state, subject to rules and
regulations of the Central Education Agency heretofore
and hereafter adopted, is hereby authorized and
empowered to conduct and supervise vocational classes
and other educational programs for students of all
ages; and whenever it deems necessary to expend local
maintenance funds for the cost thereof.

"(b) For purposes of conducting and/or supervision
by the district of such vocational classes and other
educational programs for students of any and all ages,
said board of trustees is hereby authorized and
empowered to purchase, acquire or lease real or personal
property; to contract or enter into agreements with any
department or agency of the United States or this state,
subject to rules and regulations prescribed by the
Central Education Agency appertaining to such educational
programs; and to contract or enter into agreements with
any person, partnership, firm or corporation pertaining
to the local operation and supervision of such programs by
the district." (Emphasis added.)

Section 11.02, quoted above, requires that any school dis-
trict have prior approval from the Central Education Agency,
based upon rules and regulations from said agency, before
entering into agreements with the federal government.

Section 11.30, quoted above, authorizes the Education Agency to enter contracts with the government to receive money and expend such money under conditions of the contract. See Attorney General's Opinion WW-1321 (1962).

In addition, the purpose of Section 21.111, quoted above, was to make express provision for vocational and other educational courses for students of all ages, there being a doubt concerning the extent of authority conferred under previous laws. See the Emergency Clause in H.B. 580, Acts 59th Legislature, R.S. 1965, Ch. 184, p. 381. Section 21.111 authorizes the local school districts to operate such programs, to contract with the federal government regarding such programs, and to contract with local private concerns for private operation and supervision of such programs, subject to the rules and regulations of the Central Education Agency pertaining to such educational programs.

In other words, Section 11.02 authorizes the Central Education Agency, by rule and regulation, to require the local school districts to obtain its approval before entering into agreements with or receiving money from the federal government. Section 21.111, however, makes an exception to such prior approval where "vocational classes and other educational programs for students of all ages" are concerned. Where these programs are concerned, the Central Education Agency cannot withhold approval but may, by rule and regulation, prescribe the method, etc. by which the local school district enters into contracts with the federal government or local private concerns for operation and supervision of such programs.

It is also the opinion of this office that Section 21.111 must be construed with reference to the entire body of law existing at the time of the statute as well as in para materia with any statutes dealing with the same subject insofar as the latter are not inconsistent with Section 21.111. 53 Tex.Jur2d 278, Statutes, Sec. 185; p. 280, Sec. 186. For example, if under prior laws (such as Article 2902, V.C.S.) it was not clear whether local school funds could be used for the education of persons over twenty-one, it is now clear that Section 21.111 permits

the board of trustees, subject to rules and regulations of the Central Education Agency, to conduct and supervise vocational classes and other educational programs "for students of all ages." Likewise, in contracting with private concerns under Section 21.111(b) for the instruction of public school children, a school district may not disregard the teaching qualifications and requirements, as required in other statutes of this State and permit instruction by persons who do not meet the statutory standards, such as to age, health, and educational qualifications. No doubt such matters will be included in any contract to be executed.

In light of the above discussion, the answer to your first question is a qualified "yes". The yes is qualified by a determination by the school district that such a program is vocational as defined above, and a determination by the Central Education Agency that the contracts in question are consistent with the statutes of this State and the rules and regulations of the Central Education Agency.

The second question is also answered by a qualified "yes" as discussed above.

Question No. 3 is also answered by a qualified "yes" as discussed above.

In regard to question No. 4, it should suffice to note that Subsection (a) of Section 21.111 specifically authorizes use of local maintenance funds for the vocational type programs. Consequently, the answer to your fourth question is also a qualified "yes", as discussed above.

## S U M M A R Y

A school district may enter into a contract with private concerns, pursuant to Section 21.111 of the Texas Education Code, for the operation and supervision of vocational classes and other educational programs for students of all ages,

as defined, provided such contracts comply with the rules and regulations of the Central Education Agency, and with the statutes regarding teaching qualifications and requirements.

A school district may directly enter into a contract with the federal government pursuant to Section 21.111 of the Texas Education Code, subject to rules and regulations of the Central Education Agency; and such district may use local maintenance funds to carry out the purpose of such contracts.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James C. McCoy
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Ivan Williams
Earl Hines
William J. Craig
Jack Goodman

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant